IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TABBATHA R.,[1]

      **Plaintiff,**

      v.

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

Civil Action 2:24-cv-1708
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

Plaintiff, Tabbatha R., brings this action under 42 U.S.C. § 405(g) for review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the Court for disposition based upon Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition, (ECF No. 10), and the administrative record (ECF No. 7). This matter is before the Undersigned Magistrate Judge upon the unanimous consent of the parties under 28 U.S.C. § 636(c). For the following reasons, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff protectively applied for SSI on May 10, 2021, alleging disability beginning January 1, 2004, due to fibromyalgia, seizures, deafness and back surgery. (R. at 220-26, 251.) Plaintiff's application was denied initially in December 2021, and upon reconsideration in June

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

2022. (R. at 92-118, 127-29.) On March 2, 2023, Plaintiff, who was represented by counsel, appeared and testified telephonically at a hearing held by an administrative law judge. (R. at 36-73.) On May 10, 2023, Susan Smoot (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 17-35.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.)

## II.  RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to her conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III. ADMINISTRATIVE DECISION

On May 10, 2023, the ALJ issued her decision. (R. at 17-35.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantially

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform her or her past relevant work?

2

gainful activity since May 10, 2021, the application date. (R. at 23.) The ALJ found that Plaintiff has had the following severe impairments: obesity; degenerative disc disease of the lumbar spine with spondylosis, status-post surgery; facet arthropathy of the lumbar spine; fibromyalgia; hearing loss; seizure disorder; mild left carpal tunnel syndrome; anxiety; and an unspecified neurocognitive disorder. (*Id.*) She further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC"), in pertinent part, as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can stand and/or walk (with normal breaks) for a total of about 4 hours in an 8-hour workday and can sit for about 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. She can occasionally stoop, kneel, crouch and crawl. She can occasionally reach overhead with the bilateral upper extremities. She can frequently handle and finger with the bilateral upper extremities. She can work in an environment with up to moderate noise. She should avoid exposure to dangerous moving machinery and unprotected heights and should perform no commercial driving. She can perform simple tasks in a setting free of fast-paced production requirements or strict production quotas and infrequent changes in routine. She should not be required to perform work tasks that involve customer service duties, confrontation, conflict resolution, directing the work of others, persuading, or influencing others, or being responsible for the safety or welfare of others.

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

(R. at 25.)

At step four of the sequential process, the ALJ determined that Plaintiff has no past relevant work. (R. at 29.) Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 30.) The ALJ therefore concluded that Plaintiff has not been under a disability since May 10, 2021, the date the application was filed. (*Id.*)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

4

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.  ANALYSIS

Plaintiff raises two issues in her statement of errors.  First, Plaintiff asserts that the ALJ failed to properly apply the criteria of Social Security Ruling 16-3p.  Further, Plaintiff contends that the ALJ failed to properly consider the totality of Plaintiff's impairments when formulating the RFC.  The Court disagrees as to both claimed errors and finds that the ALJ's decision is supported by substantial evidence.

### A. The ALJ properly applied the criteria of Social Security Ruling 16-3p when considering Plaintiff's complaints

Plaintiff's argument on this issue is not particularly clear.  Rather, Plaintiff broadly asserts that the ALJ "failed to properly apply the criteria of Social Security Ruling 16-3p" and improperly "found that the effect of the combination of Plaintiff's symptoms allowed her to engage in work on a full-time and sustained basis." (ECF No. 8 at 10.)  More specifically, however, it appears that Plaintiff's focus is the ALJ's evaluation of her subjective complaints of pain.  Plaintiff states that her "pain and its

5

related objective findings, interfered with her ability to … complete work on a sustained and full-time basis" and cites to the two-step process relevant to "determining whether pain is a disabling impairment." (*Id*. at 15.) According to Plaintiff, a remand is necessary "to consider the effects of Plaintiff's pain symptoms and that the pain interfered with her ability to perform substantial gainful activity on a full-time and sustained basis." (*Id.*) Further, Plaintiff asserts that it is "unclear … whether the ALJ considered all the evidence when completing her pain analysis." (*Id.*)

As Plaintiff notes, when symptoms of disabling severity are alleged, the ALJ must follow a two-step process when evaluating those symptoms. First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. § 404.1529(c)(1). Second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence according to seven factors. 20 C.F.R. § 404.1529(c)(2), (3). Relevant here, these factors include (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). While the ALJ is not required to analyze all seven factors, he must show that he considered the relevant evidence. *Kimberly C. v. Comm'r of Soc. Sec.*, No. 1:22-cv-637, 2023 WL 6807955, at *3 (S.D. Ohio Oct. 16, 2023) (citing *Roach v. Comm'r Soc. Sec.*,

No. 1:20-cv-01853, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021)).

Although the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and based on a consideration of the entire record, it remains the province of the ALJ—not the reviewing court—to assess the consistency of Plaintiff's symptom reports against the record as a whole. *See Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007); *Molly M. v. Comm'r of Soc. Sec.*, No. 3:20-cv-274, 2022 WL 336412, at *5 (S.D. Ohio Feb. 4, 2022) ("[I]t is not in this Court's province to reweigh the evidence or decide questions of credibility."). Further, when an ALJ finds contradictions between medical evidence and a claimant's subjective reports, "discounting credibility to a certain degree is appropriate." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Therefore, "absent a compelling reason," an ALJ's credibility and consistency determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Much of Plaintiff's argument recites evidence that she views as supporting her pain allegations. (ECF No. 8 at 11-15.) "But 'a Plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ.'" *Skrzypiec v. Comm'r of Soc. Sec.,* No. 1:24-CV-00356-BMB, 2024 WL 4471122, at *10 (N.D. Ohio Oct. 11, 2024), *report and recommendation adopted*, No. 1:24-CV-00356, 2024 WL 4626237 (N.D. Ohio Oct. 30, 2024) (quoting *Zingale v. Kijakazi*, No. 1:20-CV-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022)). "This is because the ALJ is not required to accept a claimant's subjective complaints and may discount subjective testimony when the ALJ finds the complaints are inconsistent with objective medical and other evidence." *Id*. (citing *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475-476 (6th Cir. 2003)). In reviewing

an ALJ's evaluation of an individual's symptoms, the court is limited to evaluating whether the ALJ's explanations for discrediting an individual's testimony are reasonable and supported by substantial evidence in the record. *Id.*

Here, the ALJ's explanation for discounting Plaintiff's testimony is reasonable and supported by substantial evidence. First, the ALJ discussed the Plaintiff's testimony regarding her impairments and symptoms as follows:

> [Plaintiff] alleged that she is disabled due to fibromyalgia, seizures, deafness, and a history of back surgery (3E/2). She reported that her ability to work is limited because she is always in pain and is not able to lift much weight (4E/1). [Plaintiff] further alleged that her symptoms and conditions affect her ability to squat, bend, stand, walk, and sit (4E/5). At the reconsideration level, [Plaintiff] reported that her back condition had worsened following a car accident, and that her legs were now numb and "give out". She also indicated that she had recently been diagnosed with Lyme disease (5E/2). [Plaintiff] testified that she stopped working because she could not go up and down the stairs due to the fact that she can no longer feel her legs. She explained that they will "give out", causing her to fall. She testified that she is beginning to have no feeling in her arms and cannot feel her fingers. [Plaintiff] testified that her fibromyalgia causes pain if she rubs up against something and keeps her from sitting for too long. She testified that she has a seizure about once per year and wears hearing aids for bilateral hearing loss. [Plaintiff] testified that she can stand for about an hour before needing to sit down, can walk about 3 blocks, and can sit for only an hour. She testified that on a typical day her pain is a "7/10" and that she struggles to lift even a coffee cup (Hearing).

(R. at 26.)

The ALJ then found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence. (*Id.*) The ALJ then summarized Plaintiff's treatment history in this way:

> Looking first at the claimant's back problems and fibromyalgia, at the time of her protected filing date she was treating for an exacerbation of back pain due to a motor vehicle accident (6F/1). She had previously undergone a lumbar fusion

8

procedure in 2019 after being diagnosed with degenerative disc disease of the lumbar spine with radiculopathy and stenosis (2F/3). A CT scan of the lumbar spine imaged in July of 2021 showed no significant stenosis, but did find an osteophyte at the L1-L2 level that was causing mild narrowing of the central canal (6F/7-8). In August of 2021, the claimant established care with Robert Dallara, M.D., who began treating her pain symptoms with Flexeril and oxycodone (6F/1). Upon initial examination, Dr. Dallara found that the claimant had a normal gait, could rise from a seated position without hesitancy, and had full strength in all extremities, but did have some reduced range of motion in the lumbar and cervical spine (6F/6).

At a follow-up in September of 2021, the claimant reported that her pain was only a "3/10" (6F/13). An MRI of the lumbar spine imaged on September 17, 2021, showed the expected post-surgical changes with a small disc bulge at the L1-L2 level, but no sign of significant stenosis (6F/28). An MRI of the cervical spine showed only mild degenerative changes with his signs of stenosis or foraminal narrowing (6F/26). By November of 2021, the claimant reported an increase in pain, along with numbness in her arms and legs. She told Dr. Dallara that she was using a cane for fear of losing her balance (6F/21). However, she further stated that her medication did help to reduce her pain and improved her functional ability without side effects (6F/22).

The claimant visited Mary Penkala, APRN-CNS, APRN-CNP, at Dr. Dallara's office in January of 2022. Ms. Penkala first noted that the recent MRIs were at odds with the claimant's complaints of weakness and numbness in her extremities (6F/29). The claimant told Ms. Penkala that she was often afraid the she would lose her balance, but did not use a cane or assistive device because "people look at her funny." She further indicated that she was happy with her current care plan and had a 50% reduction in her overall pain (6F/31). In February of 2022, the claimant underwent EMG testing of the lower limbs which showed no sign of any nerve damage (7F/6).

At a follow-up in April of 2022, the claimant stated that her pain was reduced to a "2/10" (6F/38). The claimant continued to visit Ms. Penkala, who generally noted unremarkable exams but for the aforementioned decreased range of motion in the lumbar and cervical spine and decreased strength in the left lower extremity (e.g., 6F/49). In August of 2022, Ms. Penkala discontinued the claimant's Flexeril secondary to side effects and recommended that she continue a low dose of oxycodone for the next 2 months while pursuing neurologic care (6F/51). The most recent available records from Ms. Penkala's office indicate that she continued to treat the claimant with oxycodone (9F/13).

In January of 2023, the claimant underwent EMG testing of the upper extremities that showed mild ulnar neuropathy across the right elbow and mild carpal tunnel

9

>syndrome on the left (10F/3). She was scheduled for a neurologic follow-up, but there is no record of any further treatment for this condition. Although there is no indication in her treatment records that the claimant has been diagnosed with fibromyalgia, State consultative internal medicine examiner Bradford Jones, D.O., found a significant number of tender points that he believed met the criteria for this condition (2F/6).
>
>In terms of the claimant's seizure disorder and hearing loss, there is no record of any treatment for these conditions since her protected filing date. However, Dr. Jones noted the claimant's reported history of a seizure disorder. As indicated above, the claimant testified that she has approximately one seizure per year. Dr. Jones also reported that the claimant wears hearing aids for bilateral hearing loss (2F/6).

(R. at 26-27.)

After summarizing Plaintiff's treatment history, the ALJ concluded that Plaintiff has some limitations related to her pain, weakness, seizure disorder, and hearing loss. However, the ALJ noted that Plaintiff has required only conservative treatment, and that the objective evidence as laid out above did not reveal any underlying conditions that would support the levels of pain that Plaintiff alleged. Beyond this, the ALJ cited Plaintiff's large variety of activities of daily living, including cooking, doing laundry, sweeping, caring for her children, shopping, driving, and going fishing with her children. (R. at 27-28.)

The ALJ provided limitations to accommodate Plaintiff's symptoms. In doing so, the ALJ also noted the assessments of the state agency medical consultants. The ALJ then specifically provided further accommodations than those opined, citing Plaintiff's subjective complaints. (R. at 29 "the undersigned has provided some further postural and manipulative restrictions based upon [Plaintiff]s subjective complaints and recent testing.")

In the face of this, Plaintiff argues that the ALJ "failed to note any treatment which did not support her conclusion that Plaintiff had minimal pain." (ECF No. 8 at 15.) This is

10

essentially a "cherry-picking" argument. This type of "allegation is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014). Moreover, contrary to Plaintiff's characterization, the ALJ specifically considered much of the evidence Plaintiff claims was ignored. (*See, e.g.,* R. at 27-28 citing R. at 463, 471, 476, 49, 397, 416, 418).

In short, the ALJ considered many of the records on which Plaintiff relies but found that other evidence contradicted Plaintiff's claims. The ALJ supported her opinion with substantial evidence, including medical records, Plaintiff's daily activities, the duration and intensity of Plaintiff's symptoms and the conservative treatment Plaintiff received for her conditions. For her part, Plaintiff has not identified a compelling reason why the ALJ's credibility determination should be disturbed. Accordingly, the Court finds no merit to Plaintiff's first statement of error.

### B. The ALJ did not err in formulating the RFC

As with Plaintiff's first issue, her argument that the ALJ erred in formulating the RFC is not clearly stated. Nevertheless, she appears to be asserting two points. First, she seems to claim that the ALJ did not adequately account for her fibromyalgia symptoms in the RFC. Further, she seems to challenge the ALJ's consideration of the findings and conclusions of Brian J. Krabbe, Psy.D., the psychological consultative examiner. (ECF No. 8 at 19.) The Court disagrees and concludes that the ALJ's RFC finding is supported by substantial evidence.

Initially, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other

11

medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5).  Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3). "Medical opinion" and "prior administrative medical finding" are defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.
>
> * * *
>
> (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
>> (i) The existence and severity of your impairment(s);
>> (ii) The existence and severity of your symptoms;

12

>> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .
> (iv) Your residual functional capacity;
> (v) Whether your impairment(s) meets the duration requirement; and
> (vi) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. § 416.913(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(c)(1)–(5).

The Court turns briefly to Plaintiff's claim regarding her fibromyalgia. As set forth above, the ALJ found this condition constituted a severe impairment. As the Commissioner points out, Plaintiff's argument on this issue, raised in the context of challenging the RFC, is really a claim that the ALJ did not adequately evaluate her subjective complaints of pain arising from her fibromyalgia. And, for the reasons discussed above, this argument is not well-taken. Thus, the Court's focus with respect to this issue is limited to Plaintiff's claim that the ALJ did not adequately evaluate the opinion of Dr. Krabbe.

The starting point for the Court's analysis here is Dr. Krabbe's assessment of Plaintiff's limitations. In his functional assessment, Dr. Krabbe noted that Plaintiff performed below average on a brief abstract reasoning activity suggesting difficulty understanding instructions and performed in the low range on memory tasks which may lead to difficulty remembering instructions. (R. at 418.) Further, he cited Plaintiff's performance in the borderline range on the Processing Speed Index as suggestive of difficulty with attention and concentration. (*Id.*) He also remarked that Plaintiff presented as irritable during the evaluation which may affect her level of engagement with co-workers and supervisors. (R. at 419.) Finally, Dr. Krabbe stated that Plaintiff's self-report of anxiety symptoms "may compromise her ability to respond to work pressures leading to increased emotional instability and withdraw." (*Id.*)

The ALJ had this to say about Dr. Krabbe's assessment:

> Turning to the mental health portion of the case there is no indication of any mental health treatment since the time of the protected filing date. However, at a State consultative psychological examination in May of 2022, Bryan Krabbe, Psy.D., conducted intelligence testing and found that [Plaintiff] achieved a full-scale IQ of only 75 (4F/6). After analyzing the individual components of the test, Dr. Krabbe concluded that [Plaintiff] met the diagnostic criteria for an unspecified neurocognitive disorder, as well as an unspecified anxiety disorder (4F/8).

(R. at 28.)

> At the State consultative psychological exam, Dr. Krabbe opined that [Plaintiff] may have difficulty with attention and concentration, as well as responding to work pressures (4F/8-9). Ultimately, the [ALJ] finds the opinion of Dr. Krabbe persuasive. Although it is vague in nature, it seems to take into consideration all factors, and comports with the balance of the medical evidence and [Plaintiff]'s own testimony to the extent that it indicates that [Plaintiff] has some moderate limitations due to her mental impairments.

(R. at 29.) The ALJ then incorporated the following limitations into the RFC: "simple tasks in a setting free of fast-paced production requirements or strict production quotas and infrequent

14

changes in routine;" and no "work tasks that involve customer service duties, confrontation, conflict resolution, directing the work of others, persuading, or influencing others, or being responsible for the safety or welfare of others." (R. at 25.)

Plaintiff's argument here appears to be that the ALJ should have accounted for certain "neurocognitive deficits" noted in Dr. Krabbe's report. Specifically, Plaintiff claims that the ALJ should have included limitations accommodating that Plaintiff "would take longer than usual completing tasks, needed occasional reminders, [and] had increased fatigue as demonstrated by her difficulty recalling recent events." (ECF No. 8 at 19, 20.) As the Commissioner highlights, however, these "neurocognitive deficits," are a recitation of Plaintiff's self-reports, not Dr. Krabbe's conclusions from his examination. (ECF No. 10 at 13 citing R. at 413, 418-419.)

Simply put, Plaintiff has not shown any inconsistency between Dr. Krabbe's assessment and the ALJ's incorporation of specific mental health limitations. It is Plaintiff's burden to prove disability at this stage and she has not demonstrated how the RFC did not meet her mental health limitations. *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008). Accordingly, the Court will not recommend remand on this basis.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 8) is **OVERRULED** and the Commissioner's decision is **AFFIRMED.** The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

January 30, 2025                                         *s/ Elizabeth A. Preston Deavers*
                                                         Elizabeth A. Preston Deavers
                                                         United States Magistrate Judge